UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

PALINA DANILCHYK, ALIAKSANDRA DANILCHYK,
Petitioners,
v.
CHRISTOPHER LAROSE, warden of Otay Mesa Detention Center, et al.,
Defendants.

Case No.: 26-cv-4200-RSH-BJW

**ORDER GRANTING PETITION**

On July 22, 2026, petitioners Palina and Aliaksandra Danilchyk filed through counsel a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"). ECF No. 1. Petitioners challenge their detention without a bond hearing, pending their immigration proceedings, as unduly prolonged in violation of due process. ECF No. 1 at 11-14. The merits are fully briefed. *See* ECF Nos. 6, 8.

## I. STATEMENT OF FACTS

Petitioners, citizens of Belarus, were arrested at the San Ysidro Port of Entry on October 5, 2025. ECF No. 1 at 7. Petitioners were given a Credible Fear Interview and on October 25, 2025, were issued a Notice to Appear. *Id.* Petitioners then applied for asylum. *Id.* They received an individual hearing on April 22, 2026, and their asylum application

was denied. *Id.* On May 19, 2026, Petitioners appealed this decision to the BIA, which remains pending. *Id.* at 2, 7.

## II. LEGAL STANDARD

Title 28 of the U.S. Code, Section 2241, provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). A detainee bears the burden of demonstrating that "[sh]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).

## III. ANALYSIS

### A. Jurisdiction

Respondents first challenge this Court's jurisdiction to hear the Petition, relying on 8 U.S.C. § 1252(g). ECF No. 6 at 3-4. That provision states that, except as otherwise provided in Section 1252, and notwithstanding any other provision of law including 8 U.S.C. § 2241, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents argue that because Petitioners challenge their detention during removal proceedings, "Petitioners' claims of unlawful detention necessarily arise from" DHS's decision to commence such proceedings. ECF No. 6 at 4.

The Supreme Court has interpreted the jurisdiction-stripping provision in Section 1252(g) narrowly, limiting it to "three discrete actions": the "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)). The Supreme Court noted that "[t]here are of course many other decisions or actions that may be part of the deportation process." *Id.* In a later decision, the Court explained that it did not interpret Section 1252(g) "to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, [the Court] read the language

to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).

Petitioners are seeking to review the legality of their detention, arguing that the length of time they have been detained here is unlawful—rather than challenging the decision to commence proceedings, the adjudication of their removal case, or an action to execute their removal order. ECF No. 1 at 9, 13. They do not seek to litigate in this Court questions of whether they are removable or whether they are entitled to relief from removal. The relief they seek here is release from custody or a bond hearing at which their release may be considered by an immigration judge. *Id.* at 14. The Court concludes that Petitioners' claim is not barred by Section 1252(g).

**B. Whether Petitioners Have a Due Process Claim**

Respondents next argue that under the Supreme Court's decision in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), Petitioners have no due process rights beyond those that Congress has provided, and that their due process claim therefore fails. ECF No. 6 at 7. In *Thuraissigiam*, the Supreme Court rejected a habeas petitioner's argument that the due process clause conferred rights to challenge his expedited removal beyond those established by Congress, stating that "an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." 591 U.S. at 107. The petitioner in that case had "attempted to enter the country illegally and was apprehended just 25 yards from the border." *Id.* The Supreme Court determined that the "political department of the government" had plenary authority to admit or exclude aliens seeking initial entry, and thus "an alien in respondent's position has only those rights regarding admission that Congress has provided by statute." *Id.* at 139-40.

Following the Supreme Court's decision in *Thuraissigiam*, some district courts have adopted Respondents' reasoning to dismiss or deny habeas petitions in the context of arriving aliens subject to mandatory detention under Section 1225(b). *See Petgrave v. Aleman*, 529 F. Supp. 3d 665, 679 (S.D. Tex. 2021) ("As far as Petitioner is concerned, whatever procedure Congress has authorized is sufficient due process."); *Gonzales Garcia*

*v. Rosen*, 513 F. Supp. 3d 329, 536 (W.D.N.Y. 2021) ("Petitioner is on the threshold of initial entry into the United States and . . . he accordingly is not entitled to procedural protections beyond those provided by statute.").

Most courts have ruled otherwise. *See Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 25-cv-98-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b) . . . 'essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'") (quoting *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019)); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."). This Court agrees with the majority position that a person detained under Section 1225(b) may assert a due process challenge to prolonged mandatory detention without a bond hearing.

This Court likewise agrees with those district courts that interpret *Thuraissigiam* as circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever."); *Hernandez v. Wofford*, No. 25-cv-986-KES-CDB (HC), 2025 WL 2420390, at *3 (E.D. Cal. Aug. 21, 2025) ("Although the Supreme Court has described Congress's power over the 'policies and rules for exclusion of aliens' as 'plenary,' and held that this court must generally 'defer to Executive and Legislative Branch decisionmaking in that area,' it is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority'—through detention or otherwise.")

(citations omitted); *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The holding in *Thuraissigiam* does not foreclose Plaintiffs' due process claims which seek to vindicate a right to a bond hearing with certain procedural protections.").

Respondents also argue that a much older case, *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), establishes that arriving aliens subject to a mandatory detention scheme, regardless of the length of their detention, never become entitled by the due process clause to a bond hearing. ECF No. 6 at 6-7. This Court does not read *Mezei* to establish such a proposition. *Mezei* involved a noncitizen who had been "permanently excluded from the United States on security grounds but [who was] stranded in his temporary haven on Ellis Island because other countries [would] not take him back." 345 U.S. at 207. In 1950, the Attorney General determined, pursuant to emergency regulations that based on certain confidential information, the noncitizens should be excluded from the United States "for security reasons." *Id.* at 208-10, 214-15. The Supreme Court rejected the noncitizen's constitutional challenge, citing "considerations" of "danger to the national security":

> Thus we do not think that respondent's continued exclusion deprives him of any statutory or constitutional right. It is true that resident aliens temporarily detained pending expeditious consummation of deportation proceedings may be released on bond by the Attorney General whose discretion is subject to judicial review. By that procedure aliens uprooted from our midst may rejoin the community until the Government effects their leave. *An exclusion proceeding grounded on danger to the national security, however, presents different considerations*; neither the rationale nor the statutory authority for such release exists. *Ordinarily to admit an alien barred from entry on security grounds nullifies the very purpose of the exclusion proceeding* ….

*Id.* at 215-16 (citations omitted and emphasis added).

This Court agrees with those courts that distinguish the constitutional holding in *Mezei* as addressing the national security considerations presented in that case. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 413-14 (6th Cir. 2003) ("[T]he *Mezei* Court

explicitly grounded its decision in the special circumstances of a national emergency and the determination by the Attorney General that Mezei presented a threat to national security."); *Lett v. Decker*, 346 F. Supp. 3d 379, 386 (S.D.N.Y. 2018) ("*Mezei* may compel the conclusion that arriving aliens already excluded on national security grounds are not entitled to a bond hearing prior to their arranged deportation. However, *Mezei* does not compel the categorical conclusion that all arriving aliens may be subject to prolonged confinement without a bond hearing."); *Kydyrali*, 499 F. Supp. 3d at 772 (finding *Mezei* inapposite to the issue of whether prolonged detention without a bond hearing violates due process); *Rash v. LaRose*, No. 26-cv-8-LL-DEB, 2026 WL 249324, at *4 (S.D. Cal. Jan. 30, 2026) (same). Here, in contrast, neither the Attorney General nor any other government component has made a determination that Petitioners should be excluded on grounds of national security.

The Court concludes that it has authority to review whether Petitioners' detention, pursuant to a scheme of mandatory detention, has become unconstitutionally prolonged.

**C. Whether Petitioners' Detention is Prolonged in Violation of Due Process**

In determining whether Petitioners' detention has become prolonged, the Court applies a six-factor balancing test used by some district courts. *See Kydyrali*, 499 F. Supp. 3d at 773-74; *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019). That test considers: (1) the total length of detention to date; (2) the likely duration of future detention; (3) conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *See Kydyrali*, 499 F. Supp. 3d at 773-74. Of these factors, the first—the length of detention—is the "most important." *Id.* at 774 (quoting *Banda*, 385 F. Supp. 3d at 1118). Petitioners invoke this six-factor test in the Petition. ECF No. 1 at 12-13.

Petitioners length of detention to date exceeds one year. Respondents argue that "[i]n general, as detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." ECF No. 6 at 8 (quoting *Sibomana v. LaRose*,

No. 22-cv-933-LL-NLS, 2023 WL 3028093, at *4 (S.D. Cal. April 20, 2023) (citation omitted)). This proposition, applied to Petitioners' length of detention, favors a bond hearing. The fact that courts have granted habeas relief in some other cases involving *longer* periods of detention does not indicate that Petitioners are ineligible for such relief; still other courts have granted habeas relief in cases involving *shorter* periods of detention.[1]

The conditions of Petitioners' confinement weigh in their favor. Courts in this district have found that conditions at the Otay Mesa Detention Center, where Petitioners are detained, are "indistinguishable from penal confinement." *Kydyrali*, 499 F. Supp. 3d at 773; *Amado*, 2025 WL 3079052, at *6.

As to the likely duration of Petitioners' future detention, this factor does not favor either party on the record presented. The record also does not attribute any material delay in the removal proceedings to either Petitioners or the Government, rendering the fourth and fifth factors neutral. Finally, on the record presented, the Court is not in a position to assess the likelihood that the proceedings will result in a final order of removal; this factor is therefore also neutral.

On balance, the Court concludes that Petitioners' detention has become unreasonably prolonged. Petitioners are entitled to a prompt and individualized bond

---

[1] *See, e.g.*, *Amado v. U.S. Dep't of Justice*, No. 25-cv-2687-LL-DDL, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable.") (collecting cases); *Tonoyan v. Andrews*, No. 25-CV-00815-SKO (HC), 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) ("Petitioner has been detained approximately 11 months. This period … qualifies as prolonged."); *Gao v. LaRose*, No. 25-cv-2084 RSH-SBC, 2025 WL 2770633, at *5 (S.D. Cal. Sept. 26, 2025) ("The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."); *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) ("Petitioner has been in immigration detention … approximately one year. District courts have found shorter lengths of detention … without a bond hearing to be unreasonable.") (collecting cases); *Belov v. Warden, Otay Mesa Det. Ctr.*, No. 26-CV-1518-BTM-BLM, 2026 WL 926903, at *1 (S.D. Cal. Apr. 5, 2026) (granting bond hearing for petitioner detained for almost eleven months).

hearing, at which Respondents must justify their continued detention by a showing of clear and convincing evidence that Petitioners would likely flee or pose a danger to the community if released. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281, (2018) (explaining that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond"); *see also Martinez v. Clark*, 124 F.4th 775, 785-86 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing for a noncitizen detained under § 1226(c)).

## IV. CONCLUSION

For the foregoing reasons, the Petition is **GRANTED** as follows. Respondents are directed to arrange a bond hearing for petitioners Palina and Aliaksandra Danilchyk before an immigration court within ***seven (7) days of this order*** as described above or within such later date as they may request. The Court declines to order Petitioners' immediate release, as the Petition does not set forth an adequate legal basis for this relief.

**IT IS SO ORDERED.**

Dated: October 6, 2026

Hon. Robert S. Huie
United States District Judge